## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LARRY RICHARDSON,

Case No. 2:23-cv-10488

*Plaintiff,*

v.

Susan K. DeClercq
United States District Judge

NATHAN FALK,

Patricia T. Morris
United States Magistrate Judge

*Defendant.*

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 54)

### I.      RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that Defendant Nathan Falk's motion for summary judgment (ECF No. 54) be **GRANTED IN PART AND DENIED IN PART**. Specifically, Falk's request for summary judgment based on the defense of qualified immunity should be **DENIED**, but Falk's request to dismiss Plaintiff's claims for injunctive relief as well as his request to dismiss Plaintiff's Fourteenth Amendment claim should be **GRANTED**. If adopted, the Undersigned will certify completion of pretrial proceedings and return the case to the District Court for trial on Plaintiff's surviving claims.

1

## II.   <u>REPORT</u>

### A.   Background

This is a prisoner civil rights action under 42 U.S.C. § 1983.  Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC").  (ECF No. 54-2, PageID.415).  He alleges that Falk, a corrections officer, delayed his access to healthcare after Plaintiff complained of chest pains.  (ECF No. 13).  Specifically, Plaintiff alleges that while he was housed at the St. Louis Correctional Facility (SLF), Falk violated his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process by refusing to send him for a healthcare evaluation after he told Falk he was experiencing chest pain. (*Id.* at PageID.49).  In addition to monetary damages, Plaintiff seeks injunctive relief in the form of Falk's employment being terminated or Falk being disciplined and reassigned away from Plaintiff.  (ECF No. 54-4, PageID.430).

On the evening of January 27, 2023, Plaintiff attended a religious service around 7:00 p.m.  (*Id.* at PageID.433).  Plaintiff testified that "around 7:00, and around 7:45, 8:00, something like that, that's when my heart really started picking up and speeding."  (*Id.* at PageID.434).  Following his return from the religious service around 8:30 p.m., Plaintiff took a couple of "nitro" pills but did not experience relief from his symptoms.  (*Id.* at PageID.435).  "When the pain didn't stop, that's when I put the books up and went and told [Falk] that I was having chest

pains, they [are] not going away, I really need to see, you know, healthcare, or a doctor or something like that.  You all [have] to send me to the hospital."  (*Id.* at PageID.435).

At 8:43 p.m., Plaintiff entered an area in his unit called "the bubble" and approached Falk.  (*Id.* at PageID.439).  Plaintiff explained to Falk that he was experiencing "bad chest pain" and requested to go to healthcare.  (*Id.* at PageID.440).  Plaintiff alleges that Falk told him "No, I'm not calling them.  Go back to your cell."  (*Id.*).  Plaintiff and Falk argued briefly and then Plaintiff went and sat in a wheelchair in the back of the bubble.  At 8:52 p.m., someone arrived and transported Plaintiff to healthcare.  (*Id.* at PageID.441).  Plaintiff was in healthcare until he had an active heart attack and collapsed.  (*Id.* at PageID.443).  Plaintiff does not allege that he had any further contact or involvement with Falk during the course of his medical emergency.  (*Id.* at PageID.442).

Plaintiff commenced this action on February 28, 2023.  (ECF No. 1).  Before the Court is a motion for summary judgment brought by Falk.  (ECF No. 54).  The motion is now fully briefed (ECF Nos. 58, 59, 62) and ripe for disposition.

**B.     Legal Standard**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect

"the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there . . . are any genuine factual issues that properly can be resolved only by a finder of fact. . . ." *Id.* at 249–50, 255. Accordingly, "the evidence, all facts, and any inferences that may be drawn from the facts" must be viewed "in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004). The nonmoving party cannot rebut a Rule 56 motion by merely alleging that a genuine factual dispute exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 n.3 (1986) (quoting Fed. R. Civ. P. 56(e)). Instead, the nonmoving party must show that there is sufficient evidence in the record for "a reasonable finder of fact [to] find in its favor." *Anderson*, 477 U.S. at 248.

### C. Analysis

#### 1. Qualified Immunity

Falk first argues that he is entitled to qualified immunity as to Richardson's Eighth Amendment claim because his actions did not amount to deliberate indifference and did not violate clearly established law. (ECF No. 54, PageID.400). Under the doctrine of qualified immunity, a government official can only be held liable for violating an individual's constitutional right if that right was "clearly established" at the time. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016)

4

(citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)).  To overcome the defense, a plaintiff suing a government official must prove not only that the official violated a constitutional right, but that "no reasonably competent official would have concluded that the actions taken were unlawful." *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  Courts have discretion to address these two questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  But where "a discussion of why the relevant facts do not violate clearly established law" would reveal "that in fact the relevant facts do not make out a constitutional violation at all," the most efficient approach is to begin and end the analysis by evaluating whether the official violated a constitutional right.  *Id.*

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII; *Estelle v. Gamble*, 429 U.S. 97, 101 (1976). The government must provide medical care for those it has incarcerated, and "[d]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain," and thus violates the Eighth Amendment. *Estelle*, 429 U.S. at 103-04.  "A constitutional violation arises only when [a prison official] exhibits deliberate indifference to a prisoner's serious illness or injury that can be characterized as obduracy and wantonness rather than inadvertence or" good-faith error. *Id.* (cleaned up).

To prevail on a deliberate indifference claim, an inmate must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective component, Plaintiff must show that that Falk's acts or omissions deprived him of "the minimal civilized measure of life's necessities" and posed "a substantial risk of serious harm." *Id.* The subjective component requires proof that the prison official acted with deliberate indifference, meaning that the official knew of but disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

In most cases in which the defendant is alleged to have failed to provide treatment, there is no testimony about what inferences the defendant in fact drew. Nonetheless, in those cases, a genuine issue of material fact as to deliberate indifference can be based on a strong showing on the objective component. *Est. of Carter v. City of Detroit*, 408 F.3d 305, 313 (6th Cir. 2005). In this case, the evidence, construed in the light most favorable to Plaintiff as the nonmoving party, shows that on January 27, 2023, Plaintiff approached Falk at approximately 8:44 p.m. and informed him "that [he] was having bad chest pains and [he] needed to go to healthcare." (ECF No. 54-4, PageID.439-40). Plaintiff claims that Falk callously dismissed his concerns:

It was dismissive.  I don't know if he was being sarcastic or not.  He was like, "No, I'm not calling [healthcare].  Go back to your cell."  I'm like, "Look, I got sudden death syndrome, I could die at any given minute.  I can drop dead.  I am not going back to the cell and doing that."  He's like, "Don't drop dead on my base.  GO back to your cell."  Basically telling me to go back to the cell and die in my cell.  And that's when I am like, all right, that's it, I am not going to argue with you. I turned around."

He was like, "Go back to your cell, I am giving you a direct order, or you're going to the hole."  I turned around, walked around the back of the bubble.  I was waiting on him to come take me to the hole.  One way or another I was going to healthcare.

(ECF No. 54-4, PageID.440).  Plaintiff sat down in a wheelchair in "the bubble" at approximately 8:48 p.m., where he remained until someone came at 8:52 to transport him to healthcare.  (*Id.* at PageID.441).

Plaintiff does not allege any prior unconstitutional conduct from Falk.  To the contrary, Plaintiff testified that he had previously held Falk in esteem:

[Falk] was always a fair and upright officer, and that's why I felt comfortable going and talking to him about this.  Because like I said, I think somebody got under his kind and got on his nerves – his nerves that specific day.  That's why I say, I ain't really trying to take his livelihood, get him fired or get him nailed to the cross or nothing like that.  But he needs to take things a little more seriously in situations like this.

(ECF No. 54-4, PageID.437).  Between the time Plaintiff approached Falk and when he was wheeled out of "the bubble," approximately eight minutes elapsed.  The record supports a finding that Plaintiff told Falk that he was experiencing classic heart attack symptoms and that Falk understood what Plaintiff was requesting to be

7

evaluated by healthcare for these symptoms.  A reasonable factfinder could then infer that Falk disregarded the seriousness of the situation, which resulted in a short delay in Plaintiff receiving medical treatment.

The Sixth Circuit affirmed the denial of qualified immunity under similar circumstances in *Carter*.  In that case, a pretrial detainee informed a guard that she was experiencing chest pain, difficulty breathing, and trouble with her medication. The guard disregarded the detainee's symptoms, and the detainee eventually passed away from a heart attack.  The Sixth Circuit reasoned that "even laypersons can be expected to know that a person showing the warning signs of a heart attack needs treatment *immediately* in order to avoid death."  *Carter*, 408 F.3d at 312 (emphasis added).  Accordingly, it held that by producing evidence the guard ignored the detainee's heart attack symptoms, the detainee's estate had established the objective component of its deliberate indifference claim.  *Id.*

Put succinctly, "even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours."  *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 619 (W.D. Mich. 2009) (cleaned up) (collecting cases); *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 847–48 (6th Cir. 2002) (holding that a one-hour delay can be sufficient to establish deliberate indifference). In this kind of case, the Eighth Amendment

violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm. When prison officials are aware of a prisoner's obvious and serious need for medical treatment and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity. In such cases, the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition.

*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). To survive a motion for summary judgment, "it is sufficient to show that [the prisoner-plaintiff] actually experienced the need for medical treatment, and that the need was not addressed within a reasonable time frame." *Id.*

In this case, Plaintiff similarly informed Falk that he was experiencing chest pain and needed medical attention. It is unclear from the record whether Plaintiff told Falk that he had taken three "nitro" pills before their encounter. For his part, Falk states in his declaration that he "initially told the Plaintiff to return to his cell and that [he] would call healthcare." (ECF No. 54-3, PageID.420). Falk explains that he wanted "Plaintiff to return to his cell because multiple prisoners were moving around in the unit" and that he "had no reason to deny [ ] Plaintiff access to health care." (*Id.* at PageID.421). However, Falk does not say that he *actually* called for healthcare but does says that he did not think Plaintiff "appear[ed] to be in distress." (*Id.* at PageID.420). While the record contains evidence that very soon after Plaintiff walked away from Falk, Falk can be seen on surveillance video using his radio, it is

9

up to the factfinder whether to infer that Falk was using his radio to contact healthcare given Plaintiff's transport soon thereafter.  (ECF No. 54, PageID.397).

Ultimately, the record is sufficiently clear that Plaintiff informed Falk that he was experiencing chest pain, which he believed was a heart attack.  Although the delay in care potentially attributable to Falk was less than ten minutes, there is a genuine issue of material fact whether care was delayed due to Falk's alleged dismissal of Plaintiff's symptoms as well as a genuine issue of material fact whether Falk told Plaintiff that he would call healthcare and then in fact did so or if he instead simply told Plaintiff to go back to his cell to die.  Accordingly, Falk's motion for summary judgment under the doctrine qualified immunity should be denied.

### 2.      Fourteenth Amendment Claim

Falk next argues that Plaintiff's claims under the Fourteenth Amendment should be dismissed because his claim is properly analyzed under the Eighth Amendment.  (ECF No. 54, PageID.407).  The source of an incarcerated person's rights "depends, however, on whether the inmate is a convicted prisoner or pretrial detainee. The Eighth Amendment is the source of protection for the former; the Fourteenth Amendment protects the latter." *Craddock v. Cnty. of Macomb*, 718 F. Supp. 3d 683, 693 (E.D. Mich. 2024), *recon. denied*, 2024 WL 2607302 (E.D. Mich. May 24, 2024), and *aff'd sub nom. Craddock v. Wellpath, LLC,* 2025 WL 278577

(6th Cir. Jan. 23, 2025). In this case it is undisputed that Plaintiff is a convicted prisoner.

Nor does Plaintiff allege a plausible due process violation. The Due Process Clause of the Fourteenth Amendment provides both substantive rights and procedural safeguards. *Klimik v. Kent Cty. Sheriff's Dept.*, 91 F. App'x 396, 402 (6th Cir. 2004). Although Plaintiff does not clarify whether he alleges a substantive or procedural violation, he does not allege facts showing that he is entitled to relief under either theory. To the extent Plaintiff alleges a procedural due process violation, he alleges no facts showing that the Falk deprived him of an adequate procedure to challenge his alleged failure to immediately notify healthcare. *See generally Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (outlining the elements of a procedural due process claim). To the extent Plaintiff intends to bring a substantive due process claim, the Undersigned suggests that he still fails to state a plausible claim for relief because his injury implicates the Eighth Amendment and "the rubric of substantive due process" cannot be used to analyze a claim "covered by a specific constitutional provision." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). Accordingly, the Undersigned recommends that Falk's motion for summary judgment as to Plaintiff's claims pursuant to the Fourteenth Amendment be granted.

11

### 3.    Injunctive Relief

Falk lastly argues that Plaintiff's request for injunctive relief should be dismissed "because he seeks relief that is not warranted."   (ECF No. 54, PageID.408).  At his deposition, Plaintiff testified that he seeks injunctive relief in the form of either having MDOC terminate Falk's employment or disciplining Falk by sending him to sensitivity training and removing him from being in supervision over Plaintiff.  (ECF No. 54-4, PageID.430).  Put another way, Plaintiff is asking this Court to impose an injunction on MDOC, a nonparty to this case.

Where a prison inmate seeks an order enjoining state prison officials, this Court is required to proceed with the utmost care and must recognize the unique nature of the prison setting.  *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984).  Moreover, "such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct." *Parker v. Pechtel*, No. 1:23-CV-627, 2023 WL 5695733, at *9 (W.D. Mich. Sept. 5, 2023).

An injunction serves as a judicial declaration that a specific policy or proposed plan of action may be violative of the constitutional rights of others.  *See Flast v. Cohen,* 392 U.S. 83 (1968).  Here, there is no policy to enjoin, *i.e.*, there is no evidence of a policy of regularly scheduled, state-approved, systematic delay of

appropriate medical care.  If there were, perhaps the Court could enjoin the practice, but absent a deliberate policy, no injunctive relief is available.  *See Los Angeles v. Lyons,* 461 U.S. 95, 103–04(1983).  "Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again." *Parker*, 2023 WL 5695733, at *9.  Moreover, to the extent that Plaintiff seeks to have nonparty MDOC take actions such as terminating, disciplining, or reassigning Falk, such actions would have potential due process implications of their own.  Because the relief requested by Falk is outside the scope of this Court's jurisdiction, the Undersigned recommends dismissal of Plaintiff's request for injunctive relief.

D.      **Conclusion**

For these reasons, **IT IS RECOMMENDED** that Falk's motion for summary judgment (ECF No. 54) be **GRANTED IN PART AND DENIED IN PART**.

III.   <u>**REVIEW**</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. §

636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  June 25, 2025

s/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

14