UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY RICHARDSON,

        Plaintiff,                         Case No. 2:23-cv-10488

v.                                   Honorable Susan K. DeClercq
                                      United States District Judge

NATHAN FALK,                    Honorable Patricia T. Morris
                                      United States Magistrate Judge

        Defendant.

_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTIONS (ECF No. 64) TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, ADOPTING REPORT AND RECOMMENDATION (ECF No. 63), AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 54)**

Before this Court are Defendant Nathan Falk's objections to the magistrate judge's report and recommendation ("R&R"), which recommends that this Court grant in part and deny in part Falk's motion for summary judgment. As explained below, Falk's objections will be overruled, the R&R will be adopted, and the motion for summary judgment will be granted in part and denied in part.

## I. BACKGROUND

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Larry Richardson alleges that, while he was incarcerated at the St. Louis Correctional Facility (SLF), corrections officer Nathan Falk deliberately ignored his complaints

of bad chest pains, thus delaying the medical care he would eventually receive for a

heart attack he suffered. ECF No. 13 at PageID.48–49.

The magistrate judge aptly summarizes the relevant facts as follows:

On the evening of January 27, 2023, Plaintiff attended a religious service around 7:00 p.m. ([ECF No. 54-4] at PageID.433). Plaintiff testified that "around 7:00, and around 7:45, 8:00, something like that, that's when my heart really started picking up and speeding." (*Id.* at PageID.434). Following his return from the religious service around 8:30 p.m., Plaintiff took a couple of "nitro" pills but did not experience relief from his symptoms. (*Id.* at PageID.435). "When the pain didn't stop, that's when I put the books up and went and told [Falk] that I was having chest pains, they [are] not going away, I really need to see, you know, healthcare, or a doctor or something like that. You all [have] to send me to the hospital." (*Id.* at PageID.435).

At 8:43 p.m., Plaintiff entered an area in his unit called "the bubble" and approached Falk. (*Id.* at PageID.439). Plaintiff explained to Falk that he was experiencing "bad chest pain" and requested to go to healthcare. (*Id.* at PageID.440). Plaintiff alleges that Falk told him "No, I'm not calling them. Go back to your cell." (*Id.*). Plaintiff and Falk argued briefly and then Plaintiff went and sat in a wheelchair in the back of the bubble. At 8:52 p.m., someone arrived and transported Plaintiff to healthcare. (*Id.* at PageID.441). Plaintiff was in healthcare until he had an active heart attack and collapsed. (*Id.* at PageID.443). Plaintiff does not allege that he had any further contact or involvement with Falk during the course of his medical emergency. (*Id.* at PageID.442).

ECF No. 63 at PageID.520–21.

Richardson filed suit on February 28, 2023. ECF No. 1. Richardson's

operative complaint, ECF No. 13, alleges that Falk violated Richardson's Eighth

Amendment right to be free from cruel and unusual punishment and his Fourteenth

Amendment right to due process by refusing to send him for a healthcare evaluation

after he told Falk he was experiencing chest pains. ECF No. 13 at PageID.49. In addition to damages, Richardson seeks injunctive relief in the form of an order disciplining Falk or terminating his employment. *See* ECF No. 54-4 at PageID.430.

In January 2025, Falk moved for summary judgment. ECF No. 54. With respect to the Eighth Amendment claim, Falk argued that he was entitled to qualified immunity because his actions neither amounted to deliberate indifference nor violated clearly established law. *Id.* at PageID.400. Regarding the Fourteenth Amendment claim, Falk argued that the claim should be dismissed because the claim should be analyzed under the Eighth Amendment. *Id.* at PageID.407.

On June 25, 2025, Magistrate Judge Patricia T. Morris issued an R&R. ECF No. 63. Judge Morris recommended that Falk be denied qualified immunity as to Richardson's Eighth Amendment claim, and that the claim proceed to trial. *Id.* at PageID.522–28, 531. Judge Morris also recommended that Richardson's Fourteenth Amendment claim be dismissed and his request for injunctive relief be denied. *Id.* at PageID.528–31.

Judge Morris gave the parties 14 days to object to the R&R, but only Falk did so. ECF No. 64. Falk objects only to the recommendations that he be denied qualified immunity and that Richardson's Eighth Amendment claim should proceed to trial. *Id.* at PageID.536. Falk does not object to the recommendation to dismiss Richardson's Fourteenth Amendment claim and request for injunctive relief. *Id.*

- 3 -

## II. LEGAL STANDARDS

### A. Report and Recommendation

When a party objects to a magistrate judge's R&R, the court must review *de novo* those portions of it to which the party has objected. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3). The court must then review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing this evidence, the court has the authority to accept, reject, or modify the findings and recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, 585 F. Supp. 3d 1014, 1017–18 (E.D. Mich. 2021). The court may adopt the magistrate judge's R&R without specifying what the court reviewed. *Abousamra v. Kijakazi*, 656 F. Supp. 3d 701, 705 (E.D. Mich. 2023) (collecting cases).

### B. Summary Judgment

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *See F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 629 (6th Cir. 2014); FED. R. CIV. P. 56(a). If the movant makes such a showing, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment." *Babcock & Wilcox Co. v.*

*Cormetech, Inc.*, 848 F.3d 754, 758 (6th Cir. 2017) (citing *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015)).

All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See Anderson*, 477 U.S. at 251–52.

## III. DISCUSSION

This Court has reviewed the operative complaint, ECF No. 13, Falk's motion for summary judgment and exhibits, ECF No. 54, the accompanying response and reply, ECF Nos. 58; 59, the magistrate judge's R&R, ECF No. 63, Falk's objections to the R&R, ECF No. 64, Richardson's response to the objections, ECF No. 65, and all other applicable filings and law.

Having conducted this *de novo* review, this Court finds that Judge Morris's factual conclusions are correct, that she reasonably applied the correct law, and that her legal reasoning is sound. Therefore, this Court will adopt the R&R in its entirety. As a result, Richardson's Fourteenth Amendment claim will be dismissed and his request for injunctive relief denied. As explained below, despite Falk's objections, he will be denied qualified immunity and Richardson's Eighth Amendment claim will proceed to trial.

## A. Eighth Amendment Claim

First, Falk objects that the magistrate judge erred in determining that Richardson set forth an Eighth Amendment deliberate-indifference claim. The test for deliberate indifference includes both an objective and subjective component. *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021). The objective component asks: "Did the prisoner face a sufficiently serious risk of harm?" *Id.* at 545 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component asks: "Did the official know of and disregard the serious medical need?" *Id.* at 535 (citing *Farmer*, 511 U.S. at 838–39)).

Falk objects to the magistrate judge's conclusions regarding both the objective and subjective components. Each will be addressed in turn.

### 1. Objective Component

Under the objective component, the incarcerated plaintiff must establish that they have "serious medical needs." *Id.* at 534 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Serious medical needs include not only those that a physician has diagnosed, but also those that are "so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

- 6 -

Here, Falk objects that the magistrate judge erred in concluding that Richardson suffered an objectively serious injury. ECF No. 64 at PageID.538. In so arguing, Falk acknowledges that a heart attack is a "serious matter," but says that Richardson's symptoms were not obvious enough for him to recognize the need for medical care. *Id.* at 539 (arguing that "Richardson did not present symptoms to Falk that required immediate medical attention").

But this argument lacks merit. The record evidence shows that Richardson approached Falk and complained of "bad chest pains," ECF No. 54-4 at PageID.439–40, which is one of the "classic signs of an impending heart attack." *Est. of Carter v. City of Detroit*, 408 F.3d 305, 311–12 (6th Cir. 2005). And Falk, despite being a layperson, "can be expected to know that a person showing the warning signs of a heart attack needs treatment immediately in order to avoid death." *See id.* at 312. For this reason, a reasonable jury could find that Richardson had an obvious and thus objectively serious medical need. *See id.*

Even so, Falk, relying on *Napier v. Madison County*, further objects that Richardson needed to "place verifying medical evidence" like expert testimony into the record to establish the seriousness of his medical needs. ECF No. 65 at PageID.538–40 (citing 238 F.3d 739, 742 (6th Cir. 2001)). But *Napier* does not apply when, as here, the "facts show an obvious need for medical care that laymen would

- 7 -

readily discern as requiring prompt medical attention by competent health care providers." *Blackmore*, 390 F.3d at 898.

Rather, *Napier* applies only to a "separate branch" of Eighth Amendment cases where either (1) the plaintiff's claims are "based on the prison's failure to treat a condition adequately, or where (2) the plaintiff's affliction is seemingly minor or non-obvious." *Blackmore*, 390 F.3d at 898 (citing *Napier*, 238 F.3d at 742). Only in these situations is medical evidence "necessary to assess whether the delay caused a serious medical injury." *Id.* (citing *Napier*, 238 F.3d at 742). Because neither situation presents itself here, *Napier* does not apply. Instead, when there is an obvious need for medical care, "it is sufficient to show that [the plaintiff] actually experienced the need for medical treatment, and that the treatment was not addressed within a reasonable time frame." *Id.* at 900.

In sum, a reasonable jury could find that Richardson's complaints of bad chest pains demonstrated an obvious need for medical care, and that a layman like Falk would be able to recognize that need. *See id.* The magistrate judge did not err by concluding that Richardson satisfied the deliberate-indifference test's objective component.

## *2. Subjective Component*

Falk also objects that the magistrate judge erred in concluding that Richardson satisfied the deliberate-indifference test's subjective component. ECF No. 64 at

PageID.540. According to Falk, he did not believe that Richardson was in distress because he did not believe that any of Richardson's symptoms required emergency care. *Id.*

For the subjective component, plaintiffs must show that prison officials have a "sufficiently culpable state of mind." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). That is, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Blackmore*, 390 F.3d at 896 (quoting *Farmer*, 511 U.S. at 837). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Here, viewing the facts in Richardson's favor, a reasonable jury could find that Falk knew of, and consciously disregarded, Richardson's serious medical needs. *See id.* Record evidence suggests that Falk knew of Richardson's medical needs, given that Richardson complained directly to Falk himself about having chest pains and needing medical care. ECF No. 54-4 at PageID.439–40. And record evidence suggests that, despite Richardson telling Falk he could "drop dead" at any moment, Falk ordered Richardson to go back to his cell. *Id.* at PageID.440.

- 9 -

Falk responds that he did not actually "draw the inference," *Blackmore*, 390 F.3d at 896, that Richardson was experiencing a substantial risk of harm. ECF No. 64 at Page.ID 540.   As support, Falk notes that he is not a medical professional and that he believed Richardson was not experiencing any significant distress. *Id.* But "a jury would be entitled to discount [these] explanation[s]." *Est. of Carter*, 408 F.3d at 313. And Richardson need not have "offer[ed] explicit evidence that [Falk] in fact drew the inference" to survive summary judgment, given Richardson's "strong showing on the objective component." *See id.*

In sum, a reasonable jury could find that Falk consciously disregarded Richardson's serious medical needs. The magistrate judge did not err by concluding that Richardson satisfied the deliberate-indifference test's subjective component.

## B. Qualified Immunity

Finally, Falk objects to the magistrate judge's denial of qualified immunity. He argues that the magistrate judge erred by not independently analyzing the "clearly established" prong of qualified immunity. ECF No. 64 at PageID.541.

Qualified immunity shields government officials who perform discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official is entitled to qualified immunity is a two-pronged inquiry. Courts "must decide whether the facts

that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts must also decide "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* However, courts need not analyze the two prongs in that order. *See id.* at 236 (noting the "sequence" of the two-prong qualified immunity analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), "should no longer be regarded as mandatory," and that courts may "exercise their sound discretion" to decide which of the two prongs should be analyzed first).

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although an earlier case need not have resolved the exact issue, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, there must be "binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point." *Wenk v. O'Reilly*, 783 F.3d 585, 598 (6th Cir. 2015) (quoting *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 417 (6th Cir. 2011)).

Here, Falk argues that the magistrate judge erred by defining the "clearly established law" at too high a level of generality, as the Supreme Court cautions

against. ECF No. 64 at PageID.541 (citing *White v. Pauly*, 580 U.S. 73, 79 (2017)). Specifically, Falk says this case is not about whether "there was a general right that Richardson be sent to healthcare immediately," but rather "whether a delay of less than ten minutes constitutes deliberate indifference." *Id.* Falk argues that neither the magistrate judge nor Richardson could point to any case establishing that "a short delay in medical care of less than ten minutes amounts to deliberate indifference." *Id.* at PageID.542.

But such a case exists. In *Tlamka v. Serrell*, the plaintiff's incarcerated father suffered a heart attack and collapsed in a prison yard. 244 F.3d 628, 630 (8th Cir. 2001). A nearby prisoner ran to notify corrections officers that the man was having a heart attack. *Id.* Other prisoners immediately began CPR, and the man started to improve, regaining a more normal color and opening his eyes. *Id.* at 630–31. Corrections officers then arrived and ordered the prisoners to stop CPR until medical staff could arrive, which the prisoners reluctantly did. *Id.* at 631. After ordering the prisoners to stop, none of the corrections officers approached the man to check his pulse, continue CPR, or provide him any medical attention. *Id.* The corrections officers, by ordering the prisoners to stop CPR and not tending to the man themselves, delayed the man's medical treatment for ten minutes at most. *Id.* The man was ultimately transported to the hospital but died soon after. *Id.*

The Eighth Circuit held that the corrections officers were not entitled to qualified immunity. *Id.* at 635. The court reasoned that "any reasonable officer would have known that delaying [the man's] emergency medical treatment for 10 minutes, with no good or apparent explanation for the delay, would have risen to an Eighth Amendment violation." *Id.* The court further noted that if such a delay indeed occurred as claimed, then it would "constitute a quintessential case of deliberate indifference to serious medical needs." *Id.*

Here, *Tlamka* is directly on point. Like the corrections officers in *Tlamka*, Falk delayed Richardson's medical care for a heart attack for around 10 minutes—making him wait to go to health care from around 8:43 PM to 8:52 PM. *See* ECF No. 54-5 at PageID.445. And Falk should have known that delaying Richardson's medical treatment for 10 minutes at most, with no good explanation for the delay, would have risen to an Eighth Amendment violation. *See Tlamka*, 244 F.3d at 635. To be sure, the man in *Tlamka* presented much more severe symptoms of a heart attack than did Richardson. But that distinction is irrelevant because in both cases, the symptoms were sufficiently dire and obvious that even a layperson would understand the need for immediate medical attention. Rather, the relevant comparison is how long the medical care was delayed and whether such a delay was reasonable under the circumstances. *See id.* As *Tlamka* clearly establishes, an approximately ten-minute delay in providing medical care to someone displaying symptoms of a heart attack

could amount to deliberate indifference. *See id.* For this reason, the magistrate judge was right to deny Falk qualified immunity.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Defendant's objections, ECF No. 64, are **OVERRULED**;

2. The report and recommendation, ECF No. 63, is **ADOPTED**;

3. Defendant's motion for summary judgment, ECF No. 54, is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted as to Plaintiff's Fourteenth Amendment claim and request for injunctive relief, and they are **DISMISSED WITH PREJUDICE**. The motion is **DENIED** as to Plaintiff's Eighth Amendment claims.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: September 3, 2025

- 14 -